*Hw Hg...*

United States District Court
Southern District of Texas
FILED

FEB 22 2000

Michael N. Milby, Clerk

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

1.

Eugenio Cantu-Renteria
    Petitioner

                         *    CASE: C-99-00005-001

v.

                                C.A. C-00-75

United States of America
    Respondent

## MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE, FOR A PERSON IN FEDERAL CUSTODY PURSUANT TO TITLE 28 U.S.C. § 2255

    COMES NOW, Eugenio Cantu-Renteria, acting Pro Se, herein Petitioner, who makes and files this his Motion to Vacate, Set Aside, or Correct Sentence, Pursuant to Title 28 U.S.C. § 2255.

### JURISDICTION

    This Court has jurisdiction in this case pursuant to Title 28 U.S.C. § 2255; thereby endowing upon this Court the authority to entertain this case.

### INTRODUCTION

    Petitioner was born in Tamaulipas, Mexico in 1955. When Petitioner was 18 he moved to Houston, Texas, then to Chicago, Illinois where he lived for six years. In 1998, Petitioner moved back to Texas. Petitioner has two children living in the United States. Petitioner has a 6th grade education. Petitioner's vocation is a truck driver.

CHsPDF - www.fsdis.com

## ISSUES INVOLVED

I.   Were Petitioner's constitutional rights violated when he was
     not provided with effective assistance of counsel as guaranteed
     by the Sixth Amendment?

II.  Were Petitioner's rights violated when he was pressured into
     a plea that was not voluntary, knowing, or intelligent?

III. Should the Court have given Petitioner a downward departure
     for voluntary deportation?

IV.  Was Petitioner a victim of illegal search?

(2)

## Right To Appeal

A waiver of the right to appeal or challenge unknown sentence cannot be knowing and intelligent.

The United States District Court for the District of Columbia has served notice that it will not accept guilty pleas based on agreements that require the defendant to give broadly worded waiver of the right to appeal or collaterally challenge an as-yet unimposed sentence. Such a plea cannot be knowing or intelligent, the court said. It was especially critical of the Justice Department's policy evidenced in a memo sent to the U.S. Attorney's Office by the acting head of the Criminal Division, of trying to preserve its own sentence-appeal rights while requiring defendants to relinquish theirs. United States v. Raynor, D.C., Criminal No. 97-0186 (PLF) 12/29/97.

For all the defendant knows when he agrees to the bargain, the sentence subsequently imposed may turn out to be based on incorrect facts, or an incorrect application of the U.S. Sentencing Guidelines, the court said. This means the defendant does not really know what rights he is giving up at the time of the plea. The court complained that by extracting such waivers, the government upsets the balance struck by Congress, which has provided for sentencing uniformity, the goal of the U.S. Sentencing Guidelines. Another problem, the court continued, is that enforcement of this sort of waiver would prevent the courts from redressing instances in which defense counsel provided ineffective assistance of counsel.

When a defendant waives his right to appeal a sentence, however, he is freed of none of the uncertainties that surround the sentencing

(3)

CUtePDF - www.fasito.com

process in exchange for giving up the right to later challenge a possible erroneous application or interpretation of the Sentencing Guidelines or a sentencing statute. For example, as in this case, when it comes time for sentencing in the case, the Court could make incorrect, unsupportative factual findings with respect to relevant conduct, loss, prior planning, or role in the offense.

A defendant cannot knowingly, intelligently and voluntarily give up the right to appeal a sentence that has yet been imposed and about which the defendant has no knowledge as to what will occur at the time of the sentencing.

(4)

CSMPDF - www.fastio.com

## "Pro Se" Title 28 U.S.C. §2255 Filing
### A Less Stringent Standard

Petitioner respectfully requests this Honorable Court to hold Petitioner's "Pro Se" Motion herein prepared and filed pursuant to Title 28 U.S.C. §2255 to a less stringent standard than formal pleadings drafted by practicing attorneys as held by the Supreme Court of the United States. Further, Petitioner asserts that this complaint should not be dismissed for failure to state a claim, unless it appears beyond doubt that Petitioner can prove no set of facts in support of his claim which would entitle him to relief. Haines v. Kerner, 404 U.S. 519, 30 L.Ed.2d 652, 92 S.Ct. 594 (1972).

Likewise in a §2255 proceeding, the District Court must accord the Petitioner an evidentiary hearing "unless the motion, files and records of the case conclusively show that the prisoner is entitled to no relief." f the records are inadequate to show conclusively that the prisoner's contentions are without merit, the District Court must conduct a hearing. Anderson v. United States, 948 F.2d 704 (11th Cir. 1991).

Petitioner asserts that, it has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgement. United States v. Addonizio, 442 U.S. 178, 184, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805, 811 (1979). In determining whether a claim or error is cognizable under §2255, a distinction is drawn between constitutional errors on the one hand, and mere errors of law on

(5)

the other. See Grimes v. United States, 607 F.2d 6, 10-11 (2nd Cir. 1979).

Moreover, a Petitioning "Pro Se" prisoner whose claim is based on "a significant denial of a constitutional right" or "an error of significant constitutional dimension," may invoke protections embodied in §2255 "even though he could have raised the point on appeal and there was no sufficient reason for not doing so." See United States v. Coke, 404 F.2d 836, 846-47 (2d Cir. 1968) (en banc).

Consequently, a defendant generally bears the risk of attorneys' errors which result in a procedural default. Such errors cannot be attributed to the defendant when counsel's performance is constitutionally ineffective. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Murray v. Carrier, 477 U.S. at 488, 106 S.Ct. at 2645; Oronzio, 876 F.2d at 1511. But where a trial, sentencing or appellate counsel is constitutionally ineffective, and his or her deficient performance results in actual prejudice to the defendant, the exceptional circumstances for the §2255 remedy is apparent. Reed v. Ross, 468 U.S. 1, 9, 104 S.Ct. 2901, 2906, 82 L.Ed. 2d (1984).

Further, relief under 28 U.S.C. §2255 is reserved for transgressions of constitutional rights, claims, or errors and will not bar habeas relief under §2255, absent a deliberate choice not to appeal made by conscious election. Kaufman v. United States, 394 U.S. 217, 220, n.3, 89 S.Ct. 1068, 1070-71, n.3, 22 L.Ed.2d 227, 233-34 (1969); Buckelew v. United States, 575 F.2d 515, 519 (5th Cir. 1978).

(6)

## ISSUE I: INEFFECTIVE ASSISTANCE

Petitioner's constitutional rights were violated when he was not provided with effective assistance of counsel as guaranteed by the Constitution of the United States.

The claim of ineffective assistance of counsel is grounded in the Sixth Amendment. The right of an accused to assistance of counsel includes the right of effective assistance of counsel. McMann v. Richardson, 397 U.S. 759, 772, S.Ct. 1441 (1970).

Petitioner will show this Court the leading case of ineffective assistance of counsel is Strickland v. Washington, 466 U.S. 688, 104 S.Ct. 2053 (1994). In that case, the Supreme Court set a two-prong test. Petitioner must show that:

(1) That the representation he received fell below the objective standard; and

(2) A reasonable probability that but for errors of counsel, the results would have been different.

Further, the Petitioner's counsel was ineffective at sentencing where he provided improper or improper argument or provided mitigating evidence. Kubat v. Thieret, 679 F.Supp. 788 (N.D. Ill. 1988). Petitioner's counsel should have taken issue with the fact that Petitioner is an illegal alien and is deportable due to his conviction.

Petitioner's counsel failed to interview officers, who if he had, would have found conflicting statements and would have given credence to Petitioner's contentions that Petitioner was a victim of an illegal search. See Tosh v. Lockhart, 879 F.2d 412

(7)

(8th Cir. 1989).

In this case, Petitioner easily shows cause and prejudice, the objective of the two-prong test under Strickland, 466 U.S. 688 (1984). It is evident that counsel's tactical and presumptions are ineffective. See Kimmelman v. Morrison, 106 S.Ct. 2574, 2588-89 (1986); Murrey v. Carrier, 106 S.Ct. 2639, 2650, (1986); Green v. Arn, 809 F.2d 1257, 1263 (1987); and United States v. Wolf, 787 F.2d 1094, 1100 (1986).

According to the records, there are three additional steps counsel failed to do:

(1) Failure to add in the resulation of sentencing issues such as failure to give Petitioner ample time to go over his PSI. Counsel gave Petitioner his PSI the night before sentencing. Petitioner couldn't even read it. Petitioner had no time to read it or correct any errors;

(2) Counsel failed to contact the U.S. Attorney in order to identify mitigating circumstances such as the illegal search and the fact Petitioner should receive a downward departure for voluntary deportation; and

(3) Failure to get the assistance of the U.S. Attorney in getting information to the probation officer regarding mitigating circumstances.

Thus, Petitioner's counsel was ineffective throughout the entire criminal proceedings and should be provided with a downward departure.

(8)

## ISSUE II: KNOWING, INTELLIGENT, VOLUNTARY PLEA

Petitioner's constitutional rights were violated when he was pressured into a plea that was not "voluntary, knowing, or intelligent."

Under the guideline sentencing system, a "knowing, intelligent, and voluntary" plea has been called an "oxymoron". Because of upward adjustments, upward departures, relevant conduct, and pressure by lawyers and prosecutors alike, a defendant who pleads guilty seldom understands the ultimate consequences of accepting responsibility of the offense to which he is pleading.

Indeed, even in those cases where there are stipulations as to what the guidelines should be, the probation officer and the court are not bound by the stipulations unless they are presented under Fed.R.Crim.P.(11)(e)(1)(c). In the absence of such a binding stipulation, the above factors can make a sentence a lot longer than the defendant anticipated when the plea was entered.

Unless the defendant is made aware of all the facts both aggravating and mitigating, along with the possible sentencing options awaiting him, before entering the plea, it is impossible to make the determination that the defendant "knowingly" entered the plea.

With pressure from lawyers and prosecutors alike, many, like Petitioner are pressured into a plea that is not beneficial to him. These fear tactics are a violation of the very concept of the constitution and until stopped, there can be no knowing or voluntary plea.

(9)

Petitioner was a victim of an illegal search. Counsel didn't receive enough money to fight this issue, but rather was interested only in removing this from his caseload. In addition, counsel should have brought up the fact that Petitioner was a deportable alien and as such should receive a downward departure for voluntary deportation.

Because of the above, Petitioner could not have made a "knowing, voluntary, or intelligent" plea. As such, the plea should be with-drawn.

## ISSUE III: DOWNWARD DEPARTURE

Petitioner's constitutional rights were violated when he was not given a downward departure for voluntary deportation and counsel was ineffective for not taking issue with this fact.

Over 25% of the prisoners in federal custody are not U.S. citizens. Most of them face a second punishment after they have served their prison sentences - removal from the United States. Removal, the new name for deportation can be a harsh penalty, especially for those who have lived in the United States for many years or who have family members in the U.S. who are citizens. This is the same as Petitioner who has children who he may never see again. This is a harsh reality and a harsh sentence.

The Immigration and Nationality Corrections Act of 1994 permits federal judges to act, in effect, as immigration judges, by authorizing them to consider the deportation of aliens at senten-cing. Since sentencing is a critical phase in a criminal case,

(10)

CutePDF - www.fenito.com

the law has the effect of creating for the first time a right to counsel (and effective assistance of counsel) at such proceedings.

Thus a federal judge can balance both the immigration and conviction consequences at the time of sentencing. For example, a sentencing judge might grant cancellation of removal for qualified long-time lawful permanent residents as a way to mitigate a harsh sentence of imprisonment. On the other hand, a court might order deportation but then depart downward based on the harsh consequences of deportation.

Where there is no defense to deportation, it may be to the defendant's advantage simply to agree to deportation. That will avoid the alien being transferred for several weeks of incarceration in an INS detention facility to await a deportation hearing.

It is not necessary to get a government stipulation to deportation to receive a downward departure for voluntary deportation. **United States v. Rodriguez**, (9th Cir.) 98-50674. Under 18 U.S.C. § 3553(b) a sentencing court might base a downward departure on a mitigating circumstance not adequately taken into consideration by the Sentencing Commission. The fact that Petitioner is a deportable alien, not eligible for certain programs like camp or halfway house, is a mitigating circumstance. Thus, Petitioner should receive a downward departure for voluntary deportation.

(11)

## ISSUE IV:  ILLEGAL STOP

Petitioner's constitutional rights were violated when he was a victim of an illegal border patrol search. Petitioner is a Mexican male who is a truck driver. When going through a check station the Border Patrol agents stated he appeared nervous; therefore, forced him into an illegal search.

It is immaterial why or under what circumstances agents stop motorists, as long as they stop and search them without reasonable suspension. See **Nicasio v. INS**, 797 F.2d 700, 702 (9th Cir. 1986).

It has become a habit that the Border Patrol engages in a pattern and practice of stopping motorists without reasonable suspension and Mexican males are more subject to unconstitutional stops. This is profiling and an illegal practice.

The practice of stopping motorists for no apparent reason has escalated in the past few years due to the "drug-war". This practice has brought to the attention of the general public, law enforcement's continued attempts to locate drugs even by the use of fabricated evidence. If agents are allowed simply to state that a person appears nervous to justify searches, then there is no reason for a constitutional amendment involving this issue. Law enforcement agents will be allowed to stop anyone they wish. Until the Courts place a stop to these illegal activities, then there will be no protection as guaranteed by the Constitution of the United States.

In this case, the stop and search of the Petitioner's vehicle was unconstitutional and an illegal practice. Thus, the fruits

(12)

of that search should be suppressed and Petitioner's sentence
vacated.

## PRAYER

Petitioner prays that this Court find for Petitioner and
provide relief as follows:

I. That Petitioner's counsel was ineffective throughout the
entire criminal proceedings and as such should be given
a downward departure;

II. That Petitioner's plea was not "knowing, voluntary, or
intelligent" and as such should be withdrawn;

III. That Petitioner should be given a downward departure
for voluntary deportation; and

IV. Petitioner was a victim of an illegal search and all
fruits of said search should be suppressed.

Respectfully Submitted:

Eugenio Cantu-Renteria

## CERTIFICATE OF SERVICE

The Petitioner certifies that a true and correct copy of the
foregoing has been provided this Court by mailing such through
the United States Postal Service on this the 15 day of February,
2000.

Eugenio Cantu-Renteria

(13)